JULIUS N. KALLEY et al., Respondents, *v.* FREDERICK BAKER, Appellant.

When, through the procurement of a broker employed to effect an exchange of real estate, a contract for the exchange has been agreed upon and entered into between his customer and the person with whom the exchange was to be effected, in the absence of any express agreement to the contrary the broker is entitled to his commissions.

It is no defense, therefore, to an action by the broker to recover his commissions, that the title of the other party to the contract, to the real estate agreed to be exchanged by him, is defective, and so that he is unable to perform his contract.

(Argued January 25, 1892; decided February 12, 1892.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made February 24, 1890, which affirmed a judgment in favor of plaintiffs, entered upon a verdict and affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Albert Allan Abbott* for appellant. Plaintiff's right to compensation depended upon the performance of the under-

taking. (*Sibbald* v. *B. I. Co.*, 83 N. Y. 378; *McGavock* v. *Woodlief*, 20 How. [U. S.] 221; *Duclos* v. *Cunningham*, 102 N. Y. 678; *Fraser* v. *Wyckoff*, 63 id. 445; *Barnes* v. *Roberts*, 5 Bosw. 73.) The party-wall agreement and the Pierrepont agreement were encumbrances which made it impossible for the Humphery party to perform the contract on their part. (*Wetmore* v. *Bruce*, 22 J. & S. 149; *Trustees* v. *Lynch*, 70 N. Y. 440; *Peters* v. *Deleplaine*, 49 id. 362; *Gilbert* v. *Peteler*, 38 id. 165; *Raynor* v. *Lyon*, 46 Hun, 227; *Burwell* v. *Jackson*, 9 N. Y. 539.) The defendant was under no obligation to inform either the plaintiffs or Henry C. Humphery, or his assignee, Kearney or Ann O. Humphery, of the encumbrances existing by reason of the party-wall and Pierrepont agreements, nor to specify these as objections to the title. If he failed in this he waived nothing. (*Johnson* v. *Oppenheim*, 55 N. Y. 280; *Newbury* v. *Furnwal*, 56 id. 638.)

*Wm. J. Gaynor* for respondents. The pleadings presented no issue of fact, except as to the amount of compensation which the plaintiffs were entitled to. (*Duclos* v. *Cunningham*, 102 N. Y. 678; *Sibbald* v. *B. I. Co.*, 83 id. 378.)

FOLLETT, Ch. J. This action was begun to recover commissions alleged to have been earned by the plaintiffs in procuring the execution of a contract between the defendant and one Humphery, for the exchange of real estate.

In 1889, and for some years prior thereto, the defendant owned a farm in the state of Massachusetts, and Ann O. Humphery an apartment-house on the north side of Remsen street, in the city of Brooklyn, known as the "Aldine," in which there was certain personal property.

February 18, 1889, the defendant and Humphery entered into a written contract by which they agreed to exchange properties, both to be free from all incumbrances, except the "Aldine" was to be subject to two mortgages amounting to fifty-five thousand dollars, on the 1st of April, 1889, on which day the defendant was to convey the farm to Humphery, and she the "Aldine" to the defendant.

The parties to the contract met on the day and at the place appointed, the plaintiff's office, and a deed was tendered by Mrs. Humphery to the defendant, who raised the following objections to the title: (1) That $990 of interest was unpaid on the mortgages, and the taxes, amounting to $1,389.83, were unpaid. (2) That Mrs. Humphery was a married woman, and her husband had not joined in the deed. (3) That a former owner of the "Aldine" was a married woman, and that her husband did not join in the deed which was executed by her April 2, 1888. (4) That the bill of sale of the furniture in the "Aldine," which was to go to the defendant, was not subscribed at the end, but at about the middle of the document.

These were the only objections specifically made on the 1st of April, 1889. On the trial the defendant raised other objections. (A) That the deed tendered by Mrs. Humphery recited that the land was subject to an agreement entered into by a former owner with the owner of an adjoining lot, that a party-wall should be maintained, one-half on the land of each, and for the mutual benefit of both properties. (B) That the deed to Mrs. Humphery recited that the land was subject to a restriction imposed by a former owner of this lot and the adjoining lots, that no buildings should be built on those lots within eight feet of the north line of the street.

The defendant rejected the title offered by Mrs. Humphery, and the contract to exchange was never performed.

The question underlying all others in this case, and which is decisive of it, is, was it the understanding of the parties to this action that the plaintiffs were not to be entitled to commissions, unless mutual conveyances of the properties contracted to be exchanged were made and accepted, or whether they were entitled to commissions when the contract of exchange was executed?

It appears by the record that the defendant, in 1882, employed the plaintiffs to effect a sale of his farm, and that for some time before the negotiations were begun, which resulted in the contract to exchange, the owner of the "Aldine" had employed the plaintiffs to sell it. It is alleged

in the complaint that $750 was the value and the agreed price of the services rendered by plaintiffs for the defendant. The defendant in his answer denied that he agreed to pay any definite sum, but alleged that he "agreed that if plaintiffs should be instrumental in effecting a sale of said property upon such terms and for such consideration as might be satisfactory and agreed upon by the defendant, and not otherwise, that he, the defendant, would pay to the plaintiffs a reasonable commission for their said services."

It was also alleged in the answer that February 18, 1889, the defendant and Humphery entered into a contract (a copy of which is annexed to the answer) to convey April 1, 1889, his farm, valued at thirty thousand dollars, to Humphery, in consideration that she would convey to the defendant the "Aldine," together with the furniture therein, free and clear from all incumbrance, except two mortgages amounting to fifty-five thousand dollars. The defendant also alleged that Humphery was unable to and never had performed her contract.

The defendant testified that Julius N. Kalley, one of the plaintiffs who transacted all the business in respect to the exchange, spoke to him about the "Aldine" about December 20, 1888, and that afterwards he reported to Kalley that he had examined it. The result of his examination and of subsequent conversations was that Kalley, Humphery and the defendant went some time in the month of February, 1889, to Massachusetts and examined the defendant's farm. Kalley testified that a day or two after returning from Massachusetts, the defendant and Humphery met at the office of plaintiffs, and the result of their interview was the written contract of exchange. He said: "Q. Did they (defendant and Humphery) personally carry on their negotiations face to face? A. They did; yes, sir. Q. They entered into a contract? A. Yes, sir. Q. Is that the contract mentioned in the answer here? A. Yes, sir." This witness also testified that at an interview before the parties went to Massachusetts, the following conversation was had: "Q. What did he, defendant, say? A.

He says, if I will make a change for property down · there, what will be your charge? He seemed to hammer on this. (By the court) No, not what he seemed, just state what he did absolutely say and what you said. A. He said, what will be your charge in case you make an exchange? I said, the price of two and a half per cent on the value, thirty thousand dollars, which you put on the farm." Upon this question, the defendant testified : " Q. What did he (Kalley) say? A. He said that he thought he could exchange my property free and clear for that property, free and clear of all incumbrances, except two mortgages upon it for fifty-five thousand dollars. Q. ·What did you say? A. I will think of the matter. Q. What was the next said between you about it? A. Nothing further at that time. Q. Well, the next time? A. The next time I told him that if I could exchange my property free and clear for the Remsen street flat, free and clear from all incumbrances, except the two mortgages. Q. (By the court) · For how much? A. Two mortgages for fifty-five thousand dollars, I would do so, but I would not give him any personal property with my farm, and that if the exchange was made, I would pay him a commission. Q. What commission? A. No amount agreed upon. Q. Anything stated by him on that subject? A. He said the commission for out of town property was two and a half per cent."

There is no evidence that the plaintiffs knew anything about the title to the " Aldine ; " that they made any representations in respect to it, nor does it appear that the defendant asked them to make, or cause to be made, a search.

The trial court submitted the question as to what the agreement was to the jury, instructing them as follows : " In ordinary cases, the law is well settled where a broker is employed in reference to a sale or exchange of real estate, that when he brings a buyer to the seller who is willing and ready to enter into an agreement with the seller for the purchase of his property on the terms that the seller has fixed, and the seller is satisfied to accept him as a purchaser, then the broker has earned his commission. The earning of it is not dependent,

in such cases, on the question as to whether the buyer carries out the contract, or as to whether the seller is able to complete his contract. * * * Therefore, I say to you, in the absence of any express agreement to the contrary, the law is that the broker is entitled to his commissions when the vendor accepts, when he (the broker) brings to the vendor a party ready and willing to accept the terms fixed by the vendor, and the party is satisfactory to the vendor, and he enters into a contract with him. The contention is that there was a different agreement here. * * * Now, I propose to leave that question to you to determine. If you find that this was an ordinary contract, made without any conditions, the broker employed in the usual way, and that there was no bargain entered into between the plaintiffs and Mr. Baker, that they were only to be paid their commissions in case this sale went through, then plaintiffs are entitled to recover. If, however, the bargain agreed upon between Mr. Kalley and Mr. Baker was, that commission was only to be paid in case this whole transaction went through, as provided by the terms of the contract of exchange, the plaintiff is not entitled to recover unless you are satisfied from the evidence here that Mr. Baker capriciously refused to carry out the contract."

To this instruction the defendant took no exception except to that part of it which laid down the rule that ordinarily the broker " is entitled to commissions when the parties have been found satisfactory to each other and they have entered into a mutual contract of purchase and sale."

This exception presents no error. In *Knapp* v. *Wallace* (41 N. Y. 477), the defendant employed a broker to purchase certain real estate for a price named, agreeing to pay him one per cent on that price for his services. Through the aid and assistance of the broker a contract of sale at the price named was entered into personally between the defendant and the owner of the property. As a defense to an action brought to recover the commissions the defendant sought to show that the title of the vendor was defective, and for that reason he was unable to perform his contract. It was held " it was no

defense to the plaintiff's claim that the title to the property
was defective. Messmore (the broker) had not undertaken
that it should be good. The contract between him and
defendant did not place his right to compensation on such a
condition."

When a broker, as a part of his employment, assumes to
execute for his principal an executory .contract of sale or
exchange he does not become entitled to his commissions unless
the other contracting party is able to perform the contract on
his part. (*Barnes* v. *Roberts*, 5 Bosw. 73; *McGavock* v.
*Woodlief*, 20 How. [U. S.] 221.)

But under the facts found, these and kindred cases have no
application to this case.

The judgment should be affirmed with costs.

All concur.

Judgment affirmed.