(173 App. Div. 108)

## BUNNELL v. CHAPMAN.

(Supreme Court, Appellate Division, First Department. June 2, 1916.)

1. BROKERS ☞84(2)—READINESS OF PURCHASER TO PERFORM—BURDEN OF PROOF.

Acceptance by the seller of the purchaser procured by the seller's broker, evidenced by a formal contract in writing with the purchaser, ordinarily relieves the broker from showing that the purchaser procured was ready, willing, and able to perform.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 105; Dec. Dig. ☞84(2).]

2. BROKERS ☞54—RIGHT TO COMMISSION.

A broker employed to procure a purchaser of realty becomes entitled to commission when he procures a purchaser ready, able, and willing to perform; a principle applying equally to a broker's right to recover for negotiating a sale of cartridges.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 75–81; Dec. Dig. ☞54.]

3. BROKERS ☞82(4)—RIGHT TO COMMISSION.

A contract, negotiated by a broker for the sale of cartridges, made a transfer of funds to a bank by the buyer and the establishment of a banker's credit by him conditions precedent to the seller's obligation to manufacture and ship. *Held*, that the broker could not recover commission after abandonment of the contract, unless he alleged and proved that the buyer was ready, willing, and able to perform such conditions of the contract of sale, and the seller was in default thereunder.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 103; Dec. Dig. ☞82(4); Contracts, Cent. Dig. § 1740.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. SALES ☞85(1)—CONTRACTS—CONSTRUCTION—PRELIMINARY CHARACTER.

A contract providing that the seller "does hereby sell" and the "purchaser does. hereby buy" 550,000,000 cartridges, described as "standard seven-millimeter Mauser cartridges for military rifles," it being expressly provided that the cartridges, which were to be manufactured, should be subject to inspection and approval by the purchaser and marked for shipment as directed by him, with freight charges allowed to New York City, shipments to be made at certain rates per month, was not merely preliminary, contemplating a further contract after the seller had made arrangements to furnish bond and the buyer made a transfer of funds in bank to guarantee payment, though providing that the credit was to be established by the buyer "to assure final contract."

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 236, 238; Dec. Dig. ☞85(1).]

Appeal from Special Term, New York County.

Action by James L. Bunnell against Elverton R. Chapman. From an order overruling a demurrer to the complaint, heard as a contested motion, defendant appeals. Order reversed, and demurrer sustained, with leave to plaintiff to amend on payment of costs.

Argued before CLARKE, P. J., and LAUGHLIN, SCOTT, SMITH, and DAVIS, JJ.

Leon O. Bailey, of New York City (Huntington W. Merchant, of New York City, on the brief), for appellant.

Eugene Frayer, of New York City, for respondent.

LAUGHLIN, J. The plaintiff sues for commissions earned under an employment to obtain for the defendant a purchaser for 550,000,000 cartridges, and under the terms of the employment as alleged the amount of his commissions was to be a sum equal to the excess over $48.25 per 1,000 at which plaintiff should sell or procure a purchaser for the cartridges. It is alleged that plaintiff procured one McPherson as a purchaser, that he was accepted by the defendant, and a formal contract in writing was entered into between him and defendant on the 30th day of July, 1915, which is set forth in hæc verba in the complaint, by which the defendant was to receive $50 per thousand for the cartridges.

[1, 2] These allegations, if unqualified, would sufficiently show that the plaintiff's commissions have been earned, for acceptance by defendant of the purchaser procured by plaintiff, evidenced by a formal contract in writing with him, would ordinarily relieve plaintiff from showing that the purchaser procured was ready, willing, and able to perform, which is the rule with respect to brokers employed to procure a purchaser of real estate, and the principle would apply equally to the contract in question, if that were all. See.Kalley v. Baker, 132 N. Y. 1, 29 N. E. 1091, 28 Am. St. Rep. 542; Gilder v. Davis, 137 N. Y. 504, 33 N. E. 599, 20 L. R. A. 398; Norton v. Genessee Nat. Savings Ass'n, 57 App. Div. 520, 68 N. Y. Supp. 32; Charles v. Cook, 88 App. Div. 81, 84 N. Y. Supp. 867. See, also, Mutchnick v. Davis, 130 App. Div. 417, at page 419, 114 N. Y. Supp. 997. The plaintiff, however, further alleges that it was customary in the city of New

York, where the contract was made, to provide in transactions of that character—

"that payment of the broker's commissions should be made as the goods sold were delivered and paid for, and the plaintiff and the defendant entered upon the said transaction with knowledge of such custom, and assumed and expected, that in case the said contract of sale should be performed by the parties thereto according to its terms, the payment of the plaintiff's commissions on the transaction hereinabove set forth might be so made."

The plaintiff claims that the only effect of these further allegations is that, if the contract was performed or was to be performed, he could recover his commissions only as payments of the purchase price of the cartridges were received by the defendant, and in that event it would be necessary to show the receipt of the purchase price, or part thereof at least. But he claims that by showing that the contract, after having been made, was abandoned, or for any reason was not to be performed, he is entitled to recover presently his commissions, which were earned when the contract was signed by the vendor and vendee.

[3, 4] The plaintiff attempts to show a right to recover on the latter theory, by alleging a repudiation and abandonment of the contract by the defendant, by an unqualified refusal to perform an obligation incumbent upon him thereunder to "furnish to the bankers of the" purchaser "a letter from a bonding company or bank or trust company of acceptable standing agreeing to furnish a bond guaranteeing fulfillment of contract, said bond to be equal to 5 per cent. of the total of this contract." The learned counsel for the appellant contends that this obligation on the part of his client, a breach of which is alleged, was conditioned upon the purchaser first causing to be transferred to a New York bank the sum of $100,000 on or before noon August 3, 1915, "to guarantee the transfer of the balance and assure final contract," and within 15 days after the date of the contract "to cause to be established in a New York bank a banker's confirmed credit" for the amount to be paid as the purchase price of the cartridges. The contention is that, since performance of these conditions by the purchaser is not alleged, it was incumbent on the plaintiff to allege readiness, willingness, and ability on the part of the purchaser to perform them, and that, in the absence of such allegations, the alleged breach by the defendant is insufficient to entitle plaintiff to recover. The plaintiff says, in answer to this contention, that according to the allegations of the complaint the commissions were earned when the purchaser was procured and accepted and a formal contract made, and that the allegations with respect to the custom concerning payments merely postponed the right to payment of commissions until the purchaser paid, provided the contract was performed.

We are of opinion that such answer does not meet the situation presented by the contract and allegations of the complaint. We do not agree, however, with the contention made in behalf of the appellant that the contract alleged was preliminary merely, and that it was contemplated that there was to be a further contract after the performance by the purchaser and by the defendant of the conditions to which reference has been made. The only basis for that contention is the recital quoted

to the effect that the credit was to be established by the purchaser to "assure final contract." That claim is untenable, for the reason that the contract was complete in form, and the words quoted with respect to "final contract" do not, we think, on a consideration of the entire contract, indicate an intention on the part of the parties to execute a further contract. It is recited in the contract that the defendant "does hereby sell," and that the purchaser "does hereby buy," the cartridges, which are described as "standard seven-millimeter Mauser cartridges for military rifles"; and while it was contemplated that they were to be manufactured, it was expressly provided that they were to be subject to inspection and approval by the purchaser at the factories where manufactured, and were to be marked for shipment as directed by the purchaser, and to be "packed for export, free aboard cars at factories where made, with freight charges allowed to New York City." The conditions on which payment was to be made, and the time of payment, were expressly provided for by provisions to the effect that payments were to be made on presentation of bills of lading at the depository bank of the purchaser at New York City, accompanied by invoices and certificates of inspection, which certificates of inspection were to be dispensed with if the purchaser failed, without fault of the seller, to timely inspect before shipment, and that shipments were to be made at the rate of "one hundred millions (100,000,000) per month during the months of August, September, October, and November, and one hundred and fifty millions (150,000,000) during the month of December, 1915, or as many each month as railway transportations can be obtained for."

It is unnecessary to decide whether, as claimed by appellant, he and the respondent were jointly interested in the contract made by defendant with McPherson, for we are of opinion that in any event plaintiff's commissions were payable only in the event of performance and as payments were made to the defendant by McPherson. Although the execution of a further contract between defendant and McPherson was not contemplated, it is evident that the transfer of the funds by McPherson and the establishment of a banker's credit by him were conditions precedent to the obligation of defendant to manufacture and ship the cartridges. It is therefore incumbent on plaintiff to allege and prove readiness, willingness, and ability on the part of McPherson to perform, which he has not done, and default on the part of defendant before he can recover, excepting according to the terms of the contract which would require proof of payment of part of the purchase price, at least, by McPherson to entitle plaintiff to recover anything.

It follows that the order should be reversed, with $10 costs and disbursements, and demurrer sustained, with $10 costs, but with leave to respondent to amend on payment of costs of the appeal and of the demurrer. All concur.